UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHARKCO SEAFOOD INTERNATIONAL, LLC; KEB, L.L.C.; BRUCE DRURY; AND KEVIN DRURY; INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br>    Plaintiffs,<br><br>VERSUS<br><br>THIRD COAST INFRASTRUCTURE, LLC and MAIN PASS OIL GATHERING COMPANY, LLC<br>    Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

NOW INTO COURT, through undersigned counsel, come Plaintiffs Sharkco Seafood International, LLC ("Sharkco"); KEB, L.L.C. ("KEB"); Bruce Drury; and Kevin Drury; (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, who file this Class Action Complaint against Defendants Third Coast Infrastructure, LLC ("Third Coast") and Main Pass Oil Gathering Company, LLC ("MPOG"; together with Third Coast, "Defendants"). In support of these claims, Plaintiffs allege as follows:

### I. INTRODUCTION

On November 16, 2023, a major release of crude oil in the Gulf of Mexico commenced from the MPOG pipeline system off the coast of Plaquemines Parish, releasing from MPOG's pipeline system in the vicinity of the Main Pass of the Mississippi River delta and extending along the coastal waters toward Southwest Pass, imperiling shipping interests, fishing and shrimping interests, and the unique and valuable property and ecosystems of the Plaquemines Parish coastal wetlands and barrier islands. In short, the release of oil from MPOG's pipeline endangers the property, living, and way

1

of life of the Plaintiffs and all those similarly situated throughout Plaquemines Parish and nearby Louisiana coastal waters and wetlands.

MPOG operates the pipeline system, through which more than 80,000 barrels of oil per day are transported from offshore oil wells to Louisiana's coastal communities.

## II.   PARTIES

### A. Plaintiffs

1. Plaintiffs Sharkco Seafood International, LLC and KEB, L.L.C. are commercial fishing Louisiana limited liability companies and citizens of Louisiana, whose members are, in turn, all Louisiana citizens who reside in Louisiana and intend to remain residing in Louisiana for the foreseeable future.

2. Plaintiffs Bruce Drury and Kevin Drury are commercial fishermen and residents and citizens of Plaquemines Parish, Louisiana. They reside in Plaquemines Parish, Louisiana, and intent to continue residing in Plaquemines Parish, Louisiana, for the foreseeable future.

3. Sharkco, KEB, Bruce Drury, and Kevin Drury are members of and seek to represent a class of commercial fishermen and commercial fishing-related businesses who derive their business from the waters affected by the oil that has spilled and may be continuing to spill from the MPOG pipeline system ("the Commercial Fishing Class").

### B. Defendants

1. Made defendants herein are:

   (a) Third Coast Infrastructure, LLC ("Third Coast"), is a limited liability company organized under the laws of Delaware, with its principal place of business in Texas, doing business in the State of Louisiana and within this district; and

(b) Main Pass Oil Gathering Company, LLC, is a limited liability company organized under the laws of Delaware, with its principal place of business in Texas, doing business in the State of Louisiana and within this district. On information and belief, MPOG is a wholly owned subsidiary of Third Coast.

### III. JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2). The federal district courts maintain original jurisdiction over class action lawsuits wherein the amount in controversy exceeds five million dollars and any member of the Class is a citizen of a state different from any Defendant in the matter. 28 U.S.C. § 1332(d)(2)(A). Plaintiffs allege beyond the minimum five million dollars in damages as a result of the spill. Plaintiffs, all citizens of Louisiana, are diverse from Third Coast and MPOG, each of which are citizens of Delaware and Texas.

4. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 33 U.S.C. § 2717(b), because Plaintiffs bring claims under the federal Oil Pollution Act.

5. This Court has personal jurisdiction over all Defendants. MPOG is registered to conduct business in Louisiana and does so regularly. Third Coast is MPOG's parent company and owns and operates an extensive network of infrastructure throughout the state.

6. Venue is proper in this District as it is where the conduct complained of herein occurred, because a substantial part of the property that is subject to this litigation is located in this District and in offshore federal waters adjacent to this District, and because Defendants have caused harm to Plaintiffs who reside in and were harmed in this District. *See* 28 U.S.C. § 1391.

## IV. FACTUAL ALLEGATIONS

7.   On August 20, 2022, Third Coast's wholly owned subsidiary, MPOG, placed into service a new pipeline, the pipeline that is part of a 67-mile pipeline system at issue in this action ("the Pipeline" and "the Pipeline System"). As proclaimed on Third Coast's website, the Pipeline is a "6.5-mile 18-inch pipeline extending from a subsea connection in MP289 to a subsea connection with MPOG in MP268 with a capacity of up to 80,000 barrels per day. The new line was placed in service on August 20, 2022, when an affiliate of Occidental Petroleum began flowing its Horn Mountain production into the MPOG project. The MPOG project was completed on time and under budget and was key part of Third Coast's 2022 growth strategy."[1]

8.   On November 16, 2023, MPOG and/or Third Coast reported a release from the Pipeline System to the Natural Resources Conservation Service ("NRC"), after observing a pressure anomaly in the Pipeline. The leak location was reported to be 19 miles east of Main Pass. An overflight conducted at 2:00 p.m. on November 16 reported a slick that was "3-4 miles wide, with dark oil scattered throughout." Further reporting on November 17, 2023, observed that "[s]atellite images show the slick moved … toward the mouth of South Pass."

9.   Further reporting on November 21, 2023, observed that up to 1.1 million gallons of crude oil may have been released as of Thursday morning, November 16, and that the exact quantity as yet remains unclear.

10.   This spill causes immediate and imminent harm to Southern Louisiana's coastal communities. The oil has spread quickly through the waters of the Gulf of Mexico and is making its way to Plaquemines Parish's shoreline of pristine wetlands which are teeming with marine life, ecological preserves, oyster farms, and fish and aviary habitats, contaminating it all with the toxic

---

[1] *See* https://www.third-coast.com/post/main-pass-oil-gathering—project-completion (last visited Nov. 18, 2023).

crude oil. Currents are carrying the toxic oil toward the shoreline, threatening the closure of fishing grounds, as well as shellfish and fishing operations.

11. The toxic oil also threatens to soil previously lucrative offshore fishing grounds, killing fish, oysters, larvae, and damaging critical vegetation necessary for a healthy fishing ecosystem. The Plaintiffs already have had to halt commercial fishing operations in the affected waters and expend resources to divert operations to other waters in hopes of mitigating the damage to their operations and revenues.

12. The crude oil will ultimately ooze onto shore, invading private properties located on the coast.

13. The damage caused by the leak and spill is ongoing.

## V. CLASS ACTION ALLEGATIONS

14. Plaintiffs bring claims pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of similarly situated persons and entities. Plaintiffs initially propose a Commercial Fishing Class, as defined below, and reserve the right to amend to pursue additional classes of impacted plaintiffs as the spilled oil continues to impact additional people and businesses:

**Commercial Fishing Class**

The Commercial Fishing Class is composed of persons or entities who owned or worked on a commercial fishing vessel docked along the Gulf of Mexico as of November 16, 2023, and/or who landed seafood from waters offshore from or within the coastal waters of Plaquemines Parish between November 16, 2018 and November 16, 2023, and were in operation as of November 16, 2023, as well as those persons and businesses who purchased and resold commercial seafood so landed, at the retail or wholesale level, that were in operation as of November 16, 2023.

15. Excluded from the proposed Class are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (2) the judge to whom this case is assigned, the judge's staff, and any member of the judge's immediate family, (3) businesses that contract directly with the Defendants for use of the Pipeline, and (4) all partners, members, and employees of the law firms representing Plaintiffs and the Class Members.

16. The Class seeks monetary damages and injunctive relief. The injunctive relief that Plaintiffs and the Class seek includes an order requiring the Defendants to stop the discharge of oil from the Pipeline, ensure the integrity of the entire length of the Pipeline, clean up all oil discharged from the Pipeline, and repair, restore, or replace all moveable and immovable property damaged by the oil discharged from the Pipeline.

17. Plaintiffs reserve the right to propose additional or more refined classes or subclasses of Plaintiffs by amendment to this Complaint and/or in connection with their Motion for Class Certification, and as determined by the Court in its discretion.

18. The Plaintiffs and all those similarly situated, as defined above, are entitled to maintain this action as a class action pursuant to Rule 23(a), (b)(2), and (3), and (c)4. of the Federal Rules of Civil Procedure.

19. **Ascertainability**: The number and identity of class members can be easily ascertained. Those with the type of businesses or properties described in the class definition above, and located in the geographic areas described, can easily identify themselves. The proposed class is defined with respect to objective criteria.

20. **Numerosity**: The members of the Class are so numerous that joinder of all members is impractical. The proposed Class likely contains hundreds of members.

21.     **Commonality**: There are common questions of law and fact that predominate over any questions affecting only individual members of the Class including, but not limited to, the following:

- To the extent of determining strict liability under the Oil Pollution Act, whether the Defendants' Pipeline System discharged oil;

- With regard to fault-based state-law claims asserted herein, whether Defendants acted negligently, recklessly, wantonly, and/or unlawfully to cause the spill;

- With regard to fault-based state-law claims asserted herein, whether the Defendants installed and maintained adequate safety measures and systems on the Pipeline and in its systems of command and control to prevent and/or mitigate the spill;

- With regard to fault-based state-law claims asserted herein, whether the Defendants conducted adequate supervision of the Pipeline that could have prevented the spill or reduced its scale;

- Whether the Defendants knowingly, intentionally, or negligently concealed, suppressed, or omitted material facts concerning the safety of the Pipeline from the public;

- Whether the Defendants knowingly, intentionally, or negligently concealed, suppressed, omitted, or delayed relaying material facts regarding the spill to local, state, and federal agencies, thereby slowing the response, and/or increasing the damages to Plaintiffs and members of the Class;

22.     **Typicality**: The representative Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all the members of the Class have been injured by the same wrongful acts and omissions of Defendants. Plaintiffs' claims arise from the same practices and

7

course of conduct that give rise to the claims of the members of the Class, and are based on the same legal theories.

23. **Adequacy of Representation**: Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests contrary to or in conflict with the Class.

24. **Rule 23(b)(2)**: In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendants have acted on grounds that apply generally to the proposed Class, and a single remedy ensuring that the Pipeline and Pipeline System are repaired and are subject to appropriately stringent safety measures to ensure a spill like this does not happen again, and that all damage caused by the discharge from the Pipeline and Pipeline System is remedied by Defendants, is a single remedy that is appropriate for the proposed Class, because no Plaintiff or putative class member wants another oil spill or to be subject to damage.

25. **Rule 23(b)(3)**: In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual members of the Class, and a class action is superior to individual litigation. Individualized litigation presents the potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer case management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

26. **Rule 23(c)(4):** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). The claims of members of the Class include specific questions of law and fact that are common to all members of the Class and capable of class-wide resolution that will significantly advance the litigation.

## VI.   CAUSES OF ACTION

27.   <u>**Count 1: Violation of the Oil Pollution Act of 1990, 33 U.S.C. § 2701, et. seq:**</u>

(a)   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

(b)   The federal Oil Pollution Act ("OPA") provides that "each responsible party for … a facility from which oil is discharged … into or upon the navigable waters or adjoining shorelines … is liable for the removal costs and damages … that result from such incident." 33 U.S.C. § 2702(a).

(c)   Recoverable damages include "injury to, or economic losses resulting from destruction of, real or personal property," "the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources." *Id.* at (b)(2)(B) & (E).

(d)   OPA defines "facility" as including a "pipeline" used for transporting oil. 33 U.S.C. § 2701(7).

(e)   In the case of a discharge of oil from a pipeline, the "responsible party" is "any person owning or operating the pipeline." 33 U.S.C. § 2701(32)(E).

(f)   The Defendants are the owners and operators of the at-issue Pipeline and Pipeline System, and are thus the "responsible party."

(g) The Defendants' Pipeline and Pipeline System are a "facility" as they are pipelines that transport oil.

(h) The Defendants "discharged" oil pursuant to 33 U.S.C. §2701(7).

(i) The Gulf of Mexico and Plaquemines Parish coastal waters are "navigable waters" under OPA, 33 U.S.C. § 2701(21).

(j) The Defendants' actions, inactions, and/or omissions directly have caused a substantial and significant amount of toxic crude oil to be spilled into and upon the navigable waters off of the Plaquemines Parish coastline. The contamination illegally caused by the discharge of crude oil into the waters, imminently headed for Louisiana's coastal wetlands, has impaired the use of property and/or natural resources on which Plaintiffs and the Class depend for their livelihood, including populations of fish, shrimp, and other commercial seafood stocks and their marine ecosystems. It has also caused or will imminently cause injury to and destruction of real or personal property, as well as impairment of earning capacity of Plaintiffs and the Class.

(k) Plaintiffs and members of the Classes have suffered and will continue to suffer injury, economic losses, loss of profits, and impairment of their earning capacity as a result of the discharge of oil from the Defendants' Pipeline and Pipeline System. The harm to Plaintiffs and members of the Classes includes but is not limited to the elimination of fishing and related activities in and about fishing blocks, property damage, canceled ocean-charter events and reduced foot traffic to onshore businesses and reduced demand for fishing products.

(l) Under OPA, the Defendants are responsible for compensating Plaintiffs and the Class for their current and future injuries, removing the oil from the environment, and restoring the natural resources harmed and/or destroyed as a result of the Defendants' oil spill.

28. **Count 2: Negligence**:

    (a) Plaintiffs incorporate by reference all previous allegations in the preceding paragraphs as if fully set forth herein.

    (b) Defendants have a duty to use reasonable care to avoid damage to others. This duty has existed throughout the time that they owned and operated the Pipeline and Pipeline System.

    (c) Defendants also have and have had a duty to comply with various regulations and laws governing the handling, storage, disposal, and transportation of hazardous substances, including oil and gas.

    (d) Defendants breached these duties while operating the Pipeline and Pipeline System, which resulted in damages to Plaintiffs and their property.

    (e) In addition, Defendants have and have had the duty to clean up any contamination resulting from their operations, and to prevent it from migrating onto neighboring properties.

    (f) Defendants also have a duty not to conduct their business in a manner that causes bodily injury, economic losses, business interruption, medical expenses, lost wages, or pain and suffering.

    (g) Defendants breached this duty by operating, monitoring, and maintaining the Pipeline and Pipeline System in a negligent manner.

    (h) As a result of each Defendants' breach of these various duties, the Pipeline and/or Pipeline System have discharged oil into the waters off Plaquemines Parish in such a manner and in such amounts as to imminently imperil and endanger the properties and livelihoods

of Plaintiffs and the Class. Defendants are therefore liable for all damages and remedies detailed further below.

29. **Count 3: Strict Liability:**

(a) Plaintiffs incorporate by reference all previous allegations in the preceding paragraphs as if fully set forth herein.

(b) Louisiana Civil Code articles 2317-2317.1 provide that a custodian is strictly liable for damage occasioned by the things he owns. Defendants own and operate the Pipeline and Pipeline System. Defendants' operations resulted in damage to Plaintiffs and their property, and contamination of the waters of the Gulf of Mexico and Louisiana's coastal wetlands from which Plaintiffs and the Class derive their livelihoods. Defendants' operations are the cause-in-fact of Plaintiffs' damages.

(c) The defects in Defendants' operations caused an unreasonable risk of harm to Plaintiffs and the Class. The burden of preventing hazardous releases into the water and soil is slight in comparison to the gravity of the harm to the Plaintiffs and the Class.

(d) Defendants knew or should have known, in the exercise of reasonable care, of the unreasonable risk of releasing contaminants into the waters of the Gulf of Mexico and coastal Louisiana, and other damages as a result of their faulty operations of the Pipeline and Pipeline System.

(e) The damage Plaintiffs and the Class suffered could have been prevented by Defendants' exercise of reasonable care.

(f) Plaintiffs and the Class suffered damages as the result of Defendants' actions, and Defendants are strictly liable for those damages.

## VII. PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiffs demand judgment against Defendants, providing the following relief:

- Class certification of the class of Plaintiffs as alleged herein;
- for all recoverable compensatory, statutory, and other damages, including remediation costs, sustained by Plaintiffs and the Class, and all relief allowed under applicable laws;
- for costs;
- for both pre-judgment and post-judgment interest on any amounts awarded;
- for injunctive relief as requested above;
- for payment of attorneys' fees and costs under applicable law,
- for such other and further relief, including declaratory relief, as the Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiffs demand that this case be tried to a jury.

Respectfully submitted,

/s/ *Gladstone N. Jones, III*
Charles J. Ballay (#2719)
**Ballay, Braud & Colon, PLC**
8114 Highway 23
Belle Chasse, Louisiana 70037
Telephone: (504) 394-9841
Facsimile : (504) 394-9945
Email: Charles@NolaAttorneys.com

A.M. "Tony" Clayton (La. #21191)
D'Ann "Dee" Penner (La. #35545)
**Law Offices of A.M. "Tony" Clayton**
3741 La. Highway 1 South
Port Allen, Louisiana 70767
Telephone: (337) 564-2217

Facsimile: (225) 383-7631
Email: dpenner@claytonfrugelaw.com

Gladstone N. Jones, III (La. #22221)
Bernard E. Boudreaux, Jr. (La. #02219)
Kevin E. Huddell (La. #26930)
Michael P. Arata (La. #21448)
John T. Arnold (La. #31601)
Alayne Gobeille (La. #33856)
Thomas F. Dixon (La. #38952)
Rosa E. Acheson (La. #39775)
**Jones Swanson Huddell LLC**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508

James R. Swanson (La. #18455)
H.S. Bartlett III (La. #26795)
Lance C. McCardle (La. #29971)
E. Blair Schilling (La. #35308)
**Fishman Haygood, L.L.P.**
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250

*Counsel for Plaintiffs and the Putative Class*


**PLEASE SERVE:**

**Main Pass Oil Gathering Company, L.L.C.**
Through its Registered Agent:
COGENCY GLOBAL, INC.
4459B Bluebonnet Blvd.
Baton Rouge, LA 70809

**Third Coast Infrastructure, L.L.C.**
Through its Registered Agent:
COGENCY GLOBAL, INC.
4459B Bluebonnet Blvd.
Baton Rouge, LA 70809