# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SHARKO SEAFOOD** | * | **CIVIL ACTION NO. 23-7036-BSL-DPC** |
| **INTERNATIONAL, LLC, ET AL.** | * | |
| | * | |
| **VERSUS** | * | **JUDGE LONG** |
| | * | |
| **THIRD COAST INFRASTRUCTURE,** | * | **MAGISTRATE JUDGE CURRAULT** |
| **LLC, ET AL.** | * | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

Defendants Third Coast Infrastructure, LLC ("Third Coast") and Main Pass Oil Gathering Company, LLC ("MPOG") submit this memorandum in support of their Motion to Dismiss all claims asserted against them by Plaintiffs, as set forth in the Amended Class Action Complaint.[1] Specifically, Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) as Plaintiffs' claims are not ripe for consideration and Plaintiffs lack Article III standing to bring their claims in this Court. Alternatively, Plaintiffs' claims brought under the Oil Pollution Act of 1990 ("OPA 90"), negligence, and strict liability should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) as Plaintiffs' pleadings fail to allege necessary elements of these causes of action.

## I.    FACTUAL BACKGROUND

This lawsuit arises out of an alleged "crude oil release in the Gulf of Mexico near the Main Pass Oil Gathering (MPOG) company's pipeline system close to Plaquemines Parish, southeast of New Orleans, Louisiana . . . ."[2] After MPOG's detection of certain pressure anomalies, MPOG

---

[1] R. Doc. 7.

[2] *See* Exhibit A (U.S. Coast Guard News: Dep't of Homeland Sec., Photo Available: Unified Command Responds to Oil Discharge Near Main Pass, LA (Nov. 17, 2023), https://www.news.uscg.mil/Press-Releases/Article/3592060/photo-available-unified-command-responds-to-oil-discharge-near-main-pass-la/). To the extent that Defendants refer to Unified Command or Coast Guard documents or statements, Defendants are not conceding that the volume assumption of the amount of oil released was the actual amount of oil released. Instead,

directed a crew to fly over the system, and that crew observed oil on the water surface near the MPOG system. MPOG promptly reported the incident to the National Response Center ("NRC") on the morning of November 16, 2023 following that overflight.

On or about November 16, 2023, the Unified Command comprised of the U.S. Coast Guard ("USCG"), MPOG, and the Louisiana Oil Spill Coordinator's Office ("LOSCO") among other agencies and parties "was formed to ensure effective response, including efforts not only to mitigate the impact of the discharge of oil which had occurred, but also to determine the source and ensure that it is secured as soon as possible."[3] However, before the Coast Guard and other relevant agencies could begin, much less complete, their investigations into the incident and determine the source of the release and responsible party, Plaintiffs prematurely filed the instant action against Third Coast and MPOG, on November 22, 2023.[4] Pursuant to the Court's November 27, 2023, Order, Plaintiffs later filed an Amended Class Action Complaint on December 7, 2023, that is now the operative complaint.[5] Even today, the USCG investigation is not complete.

## II. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(1) AS THEY ARE NOT RIPE FOR REVIEW AND PLAINTIFFS LACK ARTICLE III STANDING

### A. 12(b)(1) Standard of Law

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case."[6] Lack of subject matter jurisdiction can be found in: "(1) the complaint alone; (2) the complaint supplemented by

---

Defendants note that this was an engineering calculation that estimated the volume and has not been validated or confirmed.

[3] *See* Exhibit B, at 3:50-4:09; Exhibit A.

[4] *See* R. Doc. 1.

[5] *See* R. Doc. 4 at 2; R. Doc. 7.

[6] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing Fed. R. Civ. P. 12(b)(1)).

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[7] "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction," therefore at all times here, Plaintiffs "bear[] the burden of proof that jurisdiction does in fact exist."[8]

A motion to dismiss pursuant to Rule 12(b)(1) "is characterized as either a 'facial' attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a 'factual' attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned."[9] A facial attack challenges the court's jurisdiction based solely on the pleadings, and "the court must accept all allegations in the complaint as true."[10] A factual attack introduces extrinsic evidence (affidavits, testimony, documents, etc.) relevant to the issue of jurisdiction.[11] The Court's consideration of this extrinsic evidence "does not convert the motion to one for summary judgment under Rule 56(c)."[12] Further, unlike a facial attack, when a factual attack is made, *there is no presumption of truthfulness of a plaintiff's complaint*, "and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."[13] This motion makes a factual attack. As such, this Court should not presume the truthfulness of Plaintiff's complaint.

---

[7] *Id.* (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

[8] *Id.* (first citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995); and then citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

[9] *Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Houston, Tex.*, 260 F. Supp. 3d 738, 754 (S.D. Tex. 2017) (citation omitted), *aff'd sub nom. Residents Against Flooding v. Reinvestment Zone No. Seventeen*, 734 F. App'x 916 (5th Cir. 2018); *see also Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (distinguishing between factual and facial attacks)

[10] *See Levin v. Minnesota Life Ins. Co.*, No. CIV.A. H-07-1330, 2008 WL 2704772, at *2 (S.D. Tex. July 7, 2008) (citations omitted).

[11] *See id.* (first citing *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997); and then citing *Paterson*, 644 F.2d at 523); *Residents Against Flooding*, 260 F. Supp. 3d at 754.

[12] *Residents Against Flooding*, 260 F. Supp. 3d at 754 (citing *Robinson v. Paulson*, H–06–4083, 2008 WL 4692392 at *10 (S.D. Tex. Oct. 28, 2008)).

[13] *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

Here, the Court should dismiss this suit pursuant to Rule 12(b)(1) for the two independent reasons as explained in depth below: (1) this matter is not yet ripe for review, and (2) Plaintiffs lack Article III standing.

### B.    Plaintiffs' Lawsuit Is Not Yet Ripe for Review

Plaintiffs' lawsuit is premature as it still requires substantial factual development and is therefore not yet ripe for review. "Article III of the Constitution confines federal courts to decisions of 'cases' and 'controversies.' A case or controversy must be ripe for decision, meaning that it must not be premature or speculative."[14] Accordingly, "ripeness is a constitutional prerequisite to the exercise of jurisdiction."[15] This is because "[r]ipeness ensures that federal courts do not decide disputes that are 'premature or speculative.'"[16] A case should be dismissed for lack of ripeness "when the case is abstract or hypothetical."[17] The court should consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."[18] If the remaining questions are purely legal, the case is generally ripe, whereas "a case is not ripe if further factual development is required."[19]

Here, Plaintiffs' complaint is based on hypothetical damage that has not occurred and may never occur. The Fifth Circuit has expressly held that "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical."[20] Plaintiffs' repeated references to threatened

---

[14] *Shields v. Norton*, 289 F.3d 832, 834-35 (5th Cir. 2002) (citing *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir.2000)).

[15] *Id.* (citing *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967)).

[16] *DM Abor Court, Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (quoting *Shields*, 289 F.3d at 835).

[17] *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) (citations omitted).

[18] *Id.* at 586-87 (internal quotations omitted) (first quoting *Abbott Lab'ys*, 387 U.S. at 149; and then citing *Placid Oil Co. v. Fed. Energy Reg. Comm'n*, 666 F.2d 976, 981 (5th Cir. 1982)).

[19] *Id.* at 587 (citing *Thomas v. Union Carbide Ag. Prods. Co.*, 473 U.S. 568, 581-82 (1985)).

[20] *New Orleans Pub. Serv., Inc.*, 833 F.2d at 586.

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

and/or ongoing injuries demonstrate that this case is merely hypothetical and premature at this juncture, and as such should be dismissed.[21] Plaintiffs have not alleged any actual injuries, nor could they. Further, a case is not ripe where the remaining questions are not purely legal, but requires further factual development.[22] At the time Plaintiffs filed their Amended Class Action Complaint, it was evident that further factual development would be required as none of the relevant regulatory agencies had concluded their investigations into the source of the discharge or the responsible parties (and in fact to date still have not), making the instant action premature.[23]

Plaintiffs' own complaint makes it clear that the nature of the claims is purely hypothetical at this point. Unless and until Plaintiffs further develop the factual record so that they can plausibly allege an injury, their claims will remain premature. This Court should dismiss this case pursuant to Fed. R. Civ. P. 12(b)(1) because it is not ripe for review.

### C.     Plaintiffs Lack Article III Standing

Plaintiffs' complaint should also be dismissed under Fed. R. Civ. P. 12(b)(1), as Plaintiffs lack Article III standing to bring this suit. "To have Article III standing, a plaintiff must show (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[24] Accordingly, "each element must be supported . . . with the manner and

---

[21] *See* Plaintiffs' Amended Class Action Complaint (R. Doc. 7), ¶¶ 11, 12, 13, 14, 15, 29(k).

[22] *See New Orleans Pub. Serv., Inc.*, 833 F.2d at 587 (citing *Thomas*, 473 U.S. at 581-82).

[23] *See* Exhibit B, at 12:30-13:13, 24:24-36; Exhibit C (U.S. COAST GUARD NEWS: DEP'T OF HOMELAND SEC., UPDATE 4: UNIFIED COMMAND MONITORS, RESPONDS TO GULF OIL INCIDENT (Dec. 5, 2023), https://www.news.uscg.mil/Press-Releases/Article/3607943/update-4-unified-command-monitors-responds-to-gulf-oil-incident/) ("The cause and source of the incident remain under investigation.").

[24] *El Paso Cnty., Texas v. Trump*, 982 F.3d 332, 337–38 (5th Cir. 2020) (cleaned up) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

degree of evidence required at the successive stages of litigation."[25] "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"[26] However, "the jurisdictional facts must be judged as of the time the complaint is filed . . . ."[27]

    First, Plaintiffs do not satisfy the Article III standing requirement of injury in fact. In order to establish injury in fact, a plaintiff must show that they have suffered a concrete and particularized injury that is actual or imminent.[28] An injury is concrete when it is real and not abstract.[29] "Imminence . . . cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending."[30] This means that "'[a]llegations of *possible* future injury' are not sufficient."[31] Whereas Plaintiffs make a claim that the injury is "immediate and imminent,"[32] the evidence and Plaintiffs' own complaint contradict this allegation. Numerous updates posted by the Coast Guard indicate that no oiled wildlife or oiled shoreline was observed,[33] and Plaintiffs even admit that this

---

[25] *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

[26] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 889 (1990)).

[27] *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253-54 (5th Cir. 1998) (citations omitted).

[28] *See El Paso Cnty., Texas*, 982 F.3d at 337 (quoting *Friends of the Earth, Inc., Inc.*, 528 U.S. at 180-81).

[29] *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, (2016).

[30] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotations omitted) (emphasis in original) (quoting *Monsanto Co. v. Geertson Seed Garms*, 561 U.S. 139 (2010)).

[31] *Id.* (emphasis in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

[32] *See* Plaintiffs' Amended Class Action Complaint (R. Doc. 7), ¶ 12.

[33] *See* Exhibit A ("no reports of injuries or shoreline impacts."); Exhibit D (U.S. COAST GUARD NEWS: DEP'T OF HOMELAND SEC., UPDATE 1: UNIFIED COMMAND MONITORS, RESPONDS TO MPOG11015 INCIDENT (Nov. 20, 2023) (same), https://www.news.uscg.mil/Press-Releases/Article/3593964/update-1-unified-command-monitors-responds-to-mpog11015-incident/); Exhibit E (U.S. COAST GUARD NEWS: DEP'T OF HOMELAND SEC., UPDATE 2: UNIFIED COMMAND MONITORS, RESPONDS TO MPOG 11015 INCIDENT (Nov. 22, 2023) ("observed no oiled wildlife, shoreline oiling, or oil on water."), https://www.news.uscg.mil/Press-Releases/Article/3597507/update-2-unified-command-monitors-responds-to-mpog-11015-

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

is only a "threaten[ed]" injury.[34] However, this alleged injury never occurred, and when evaluating jurisdiction, the Court need not presume the allegations in Plaintiffs' complaint are true, "and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."[35] Plaintiffs have based their complaint on allegations of possible future injuries, which the United States Supreme Court has explicitly held are insufficient to establish injury in fact.[36]

The only injury that Plaintiffs claim to have actually occurred is that they "have had to halt commercial fishing operations in the affected waters and expend resources to divert operations to other waters . . . ,"[37] however, this too is insufficient to satisfy the injury in fact requirement. Importantly, Plaintiffs fail to make any allegation that they were precluded, or even advised by any relevant regulatory authority to refrain from commercial fishing in the alleged "affected waters" for any amount of time. Plaintiffs only state that they "had to halt commercial fishing operations" without providing any evidence or additional details. Again, the Court is not bound to accept this vague, unsupported allegation as true when considering Plaintiffs' standing to bring this suit.[38] Upon weighing the evidence, the Court will find that Plaintiffs do not properly allege injury in fact and as such do not have the requisite standing to bring this lawsuit.

---

incident/#:~:text=Overflights%20have%20observed%20no%20new,or%20oil%20on%20the%20water.); Exhibit F (U.S. COAST GUARD NEWS: DEP'T OF HOMELAND SEC., UPDATE 3: UNIFIED COMMAND MONITORS, RESPONDS TO GULF OIL INCIDENT (Nov. 28, 2023) ("Recent wildlife and shoreline assessments identified no wildlife or shoreline impacts."), https://www.news.uscg.mil/Press-Releases/Article/3599439/update-3-unified-command-monitors-responds-to-gulf-oil-incident/).

[34] *See* Plaintiffs' Amended Class Action Complaint (R. Doc. 7), ¶¶ 12-13.

[35] *See Evans*, 657 F.2d at 663.

[36] *See Clapper*, 568 U.S. at 409.

[37]*See* Plaintiffs' Amended Class Action Complaint (R. Doc. 7), ¶ 13; *see also* Plaintiffs' Amended Class Action Complaint (R. Doc. 7), ¶ 29(k) (Plaintiffs later specify that this harm includes "the elimination of fishing and related activities in and about fishing blocks, property damage, canceled ocean-charter events and reduced foot traffic to onshore businesses and reduced demand for fishing products.").

[38] *See Evans*, 657 F.2d at 663.

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

Second, Plaintiffs do not satisfy the Article III standing requirement of traceability. The causal element of traceability is not established where the complained of conduct is "the result of the independent action of some third party not before the court."[39] **Importantly, "standing is not, and must not be, a guessing game."**[40] Standing instead should focus on whether an injured plaintiff "has sued a defendant *who has caused that injury*."[41] Further, mere conclusory allegations of causation are inadequate to demonstrate the causation requirement of the traceability element.[42]

Here, when Plaintiffs filed suit, they were undoubtably playing a "guessing game." As of December 7, 2023, the date that Plaintiffs filed their Amended Class Action Complaint into the record, it was public knowledge that none of the relevant regulatory agencies had concluded their investigations into the source of the discharge or the responsible parties.[43] Plaintiffs merely assumed that because one of the Defendants was a responding party to the incident and owns and operates a pipeline in the vicinity of observed oil, that both Defendants must be the responsible parties. The Coast Guard has made it clear that the responding party is not automatically the responsible party.[44] Yet, that is what Plaintiffs were trying to say when they filed this lawsuit. Finding standing here would endorse a view of strict liability for ownership of pipelines without regard to whether those pipelines actually caused any of Plaintiffs' alleged injuries.[45] That is not

---

[39] *Lujan v. Defs. of Wildlife*, 504 U.S. at 560 (cleaned up) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).

[40] *Tex. Voters All. v. Dallas Cnty.*, 495 F. Supp. 3d 441, 451 (E.D. Tex. 2020) (internal quotations omitted) (quoting *Kumar v. Frisco Indep. Sch. Dist.*, 443 F. Supp. 3d 771, 788 (E.D. Tex. 2020)).

[41] *See Ctr. for Biological Diversity v. U.S. Env't Prot. Agency*, 937 F.3d 533, 542-43 (5th Cir. 2019) (emphasis added).

[42] *See Pennie v. Obama*, 255 F. Supp. 3d 648, 661 (N.D. Tex. 2017) (citing *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 857 (S.D. Tex. 2015)).

[43] *See* Exhibit B, at 12:30-13:13, 24:24-36; Exhibit C ("The cause and source of the incident remain under investigation.").

[44] *See* Exhibit B at 11:30-12:09.

[45] It would also incentivize a rush to the courthouse before due diligence in filing a lawsuit.

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

the law and Plaintiffs cannot sustain their suit by simply guessing as to the appropriate defendant at the date of filing and hope that perhaps with expensive discovery they may be right.

Finally, Plaintiffs do not satisfy the Article III standing requirements of redressability. "Redressability requires 'a likelihood that the requested relief will redress the alleged injury.'"[46] In part, Plaintiffs request "recoverable compensation, statutory, and other damages, including remediation costs . . . ,"[47] however, Plaintiffs' complaint is devoid of allegations that Plaintiffs incurred any remediation costs related to the alleged discharge. Thus, the requested relief does not relate to any injury alleged by Plaintiffs and cannot satisfy the redressability requirement.

Plaintiffs additionally requested injunctive relief "requiring the Defendants to stop the discharge of oil from the pipeline . . . ."[48] "To seek injunctive relief, the plaintiff must show a real and immediate threat of future or continuing injury apart from any past injury."[49] Plaintiffs do not allege, nor does the evidence support, that there is any ongoing discharge from the subject pipeline. Further, as previously stated, Plaintiffs cannot show that there is an immediate threat of injury. Therefore, Plaintiffs cannot satisfy the redressability requirement for the relief sought. Accordingly, this Court should dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1).

---

[46] *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)).

[47] Plaintiffs' Amended Class Action Complaint (R. Doc. 7), Part VII.

[48] *See id.* at ¶ 18, Part VII.

[49] *Aransas Project*, 775 F.3d at 648 (citing *In re Stewart*, 647 F.3d 553, 557 (5th Cir. 2011)).

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

### III. PLAINTIFFS' CLAIMS UNDER THE OIL POLLUTION ACT OF 1990, NEGLIGENCE, AND STRICT LIABILITY MUST BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6)

#### A.    12(b)(6) STANDARD OF LAW

Fed. R. Civ. P. 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."[50] "The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff."[51] "Although, '[the court] accept[s] all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.'"[52] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[53] When it is clear on the face of the petition that there is an insurmountable bar to relief, the claim must be dismissed.[54]

Under Rule 12(b)(6), a court is limited to: (1) "facts" stated in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201.[55] Further, a court may take judicial notice of "matters of public record."[56]

---

[50] Fed. R. Civ. P. 12(b)(6).

[51] *Lone Star Fund V (U.S.), L.P., v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). Defendants' recitation of any facts as alleged by Plaintiffs is not an endorsement of said facts; Defendants expressly contest the facts as alleged in Plaintiffs' pleading.

[52] *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

[53] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[54] *Helpful Hound, L.L.C. v. New Orleans Building Corp.*, 333 F. Supp. 3d 593, 601 (E.D. La. 2018) (first citing *Jones v. Bock*, 549 U.S. 199, 215 (2007); and then citing *Carbe v. Lappen*, 492 F.3d 325, 328 n.9 (5th Cir. 2007)).

[55] *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996).

[56] *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

**B.     PLAINTIFFS DO NOT ALLEGE THAT THEY HAVE COMPLIED WITH THE PROCEDURAL REQUIREMENTS OF THE OIL POLLUTION ACT OF 1990 THEREFORE THESE CLAIMS SHOULD BE DISMISSED**

Even accepting all well-pled facts as true, Plaintiffs make no allegations that they have satisfied the procedural requirements of the Oil Pollution Act of 1990 ("OPA 90"), 33 U.S.C. § 2701 *et seq.*, which amounts to an insurmountable bar to relief for Plaintiffs' OPA 90 claims. As such, Plaintiffs' OPA 90 claims must be dismissed.

The procedural requirements for OPA 90 claims are set forth in 33 U.S.C. § 2713. Subsection (a) requires that "Except as provided in subsection (b), all claims for removal costs or damages shall be presented first to the responsible party or guarantor of the source designated under section 2714(a) of this title."[57] It is impossible for Plaintiffs to have established this requirement as neither Defendant has been designated a responsible party. Whereas Plaintiffs claim that Defendants are the responsible parties because they allegedly satisfy the definition found in 33 U.S.C. § 2701(32)(E),[58] this misstates the statute and misconstrues the law.

33 U.S.C. § 2701(32)(F), defines "responsible party" as "any person owning or operating the pipeline."[59] While MPOG owns the subject pipeline,[60] the pipeline has not yet been found to be the source of the alleged discharge. The procedure for designating the source and responsible party is found at 33 U.S.C. § 2714. The statute provides that:

> When the President receives information of an incident, the President shall, where possible and appropriate, designate the source or sources of the discharge or threat.

---

[57] 33 U.S.C. § 2713(a).

[58] Plaintiffs erroneously cited to 33 U.S.C. § 2701(32)(E) which defines "responsible party" in terms of "Deepwater ports," whereas Plaintiffs appear to bring this claim under 33 U.S.C. § 2701(32)(F), which defines "responsible party" in terms of "Pipelines".

[59] 33 U.S.C. § 2701(32)(F).

[60] Whereas MPOG owns the subject pipeline and Third Coast owns MPOG, Third Coast does not directly own the subject pipeline.

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

> If a designated sources is a vessel or a facility, the President shall immediately notify the responsible party and the guarantor, if known, of that designation.[61]

By executive order, the President delegated his authority to designate the source and responsible party "to the Secretary of the Department in which the Coast Guard is operating."[62]  Therefore, it is the USCG who designates the source and the responsible party, not Plaintiffs. Plaintiffs make no allegations and provide no evidence that the Coast Guard has designated Defendants' pipeline as the source, nor has the USCG designated Defendants as the responsible parties. In their complaint, the Plaintiffs are merely substituting their own opinion for that of the USCG in an attempt to circumvent the clear procedures set forth in OPA 90.

However, even if the USCG had designated Defendants as the responsible parties, Plaintiffs nonetheless fail to allege that they have complied with OPA 90's presentation requirement. Neither the record nor the complaint provides any evidence or allegations that Plaintiffs' claims for removal costs or damages were presented first to Defendants *prior* to instituting this action. 33 U.S.C. § 2713(c), and states that:

> If a claim is presented in accordance with subsection (a) and—
> (1) each person to whom the claim is presented denies all liability for the claim, or
> (2) the claim is not settled by any person by payment within 90 days after the date upon which (A) the claim was presented, or (B) advertising was begun pursuant to section 2714(b) of this title, whichever is later,
> the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the Fund.[63]

"The purpose of the claim presentation procedure is to *promote settlement* and avoid *litigation*," as "Congress believed that lawsuits against parties are appropriate only 'where attempts to reach

---

[61] 33 U.S.C. § 2714(a).

[62] Ex. Order No. 12777(d)(2).

[63] 33 U.S.C. § 2713(c).

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

a settlement with the responsible party . . . were unsuccessful.'"[64] As such, courts have held that this section creates a mandatory condition precedent to a lawsuit, and failing to comply results in a mandatory dismissal of OPA 90 claims without prejudice.[65] Specifically, the Eleventh Circuit has held that:

> [T]he clear text of § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claims in compliance with § 2713(a) and either: (1) all responsible parties deny all liability; or (2) the claim is not settled by payment within 90 days after (A) the claim was presented, or (B) advertising was begun under section 2714(b) of the Act, whichever is later.[66]

After finding that the plaintiffs had not complied with Section 2713, the court held that dismissal for lack of subject matter jurisdiction was appropriate.[67]

Further, a deficiency of the presentation requirement cannot be cured by subsequent notice or presentation of claims during an ongoing lawsuit.[68] The pending OPA 90 claims must be dismissed without prejudice, and the plaintiffs must fully comply with all procedural requirements including the waiting period, before refiling claims in court.[69] Here, Plaintiffs make no allegations—because they cannot—that they have complied with OPA 90's procedural requirement and presented their claims prior to filing the instant action. This deficiency cannot be cured during

---

[64] *See Gabarick v. Laurin Mar. (Am.) Inc.*, No. CIV.A. 08-4007, 2009 WL 102549, at *3 (E.D. La. Jan. 12, 2009) (internal quotations omitted) (emphasis in original) (quoting *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va.1993)).

[65] *See id.* (first citing *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995); then citing *Turner v. Murphy Oil USA, Inc.*, No. 05–4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007); and then citing *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996)).

[66] *Boca Ciega Hotel, Inc.*, 51 F.3d at 240 (citing 33 U.S.C. § 2713(c)).

[67] *See id.*

[68] *See Abundiz v. Explorer Pipeline Co.*, No. Civ. 3:00-CV-2029-H, 2003 WL 23594054, at *3 (N.D. Tex. Mar.7, 2003); *Gabarick*, 2009 WL 102549, at *3; *Boca Ciega Hotel, Inc.*, 51 F.3d at 240.

[69] *See Abundiz*, 2003 WL 23594054. at *2-3 (emphasis in original) ("When a plaintiff fails under the . . . OPA notice/presentment requirements, and his claim is dismissed, the plaintiff may *refile* his claim after giving proper notice/presentment and waiting the prescribed amount of time.").

the pendency of this lawsuit, and as such, Plaintiffs' OPA 90 claims should be dismissed without prejudice.

### C.      PLAINTIFFS DO NOT STATE A CLAIM FOR NEGLIGENCE

Whereas Plaintiffs allege a cause of action for "negligence,"[70] Plaintiffs fail to cite any specific federal or state authority for such a claim. Fed. R. Civ. P. 8(a) states that "A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; [and] (2) a short and plain statement of the claims showing that the pleader is entitled to relief . . . ."[71] The purpose of Rule 8 is to "avoid confusion and to put the defendant on notice of the claims against it," and provide the grounds upon which the claim rests.[72] "Pursuant to Rule 8(a), a complaint will be deemed inadequate only if it fails to (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist."[73] Where a "pleading falls short of the requirements in Rule 8, Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint on motion by a defendant for failure to state a claim upon which relief can be granted."[74]

By not identifying the specific authority for their claims, Plaintiffs are shifting the burden to Defendants to determine under which laws Plaintiffs are bringing their negligence claims. This prevents Defendants from being able to accurately defend against the cause of action, or

---

[70] *See* Plaintiffs' Amended Class Action Complaint (R. Doc. 7), ¶ 30.

[71] Fed. R. Civ. P. 8(a).

[72] *See Idar v. Cooper Tire & Rubber Co.*, No. C-10-217, 2010 WL 3702579, at *1 (S.D. Tex. Sept. 15, 2010) (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993)).

[73] *Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.*, 173 F.3d 946, 950 (5th Cir. 1999) (citation omitted).

[74] *Patel v. Wells Fargo Bank, N.A.*, No. 3:11-CV-3056-B, 2012 WL 13026802, at *1 (N.D. Tex. Jan. 24, 2012).

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

appropriately identify and address any pertinent elements with any degree of certainty. Accordingly, this cannot be said to satisfy the Rule 8 requirements, therefore the Court should dismiss Plaintiffs' negligence claims pursuant to Rule 12(b)(6).

### 1.    PLAINTIFFS DO NOT STATE A CAUSE OF ACTION FOR NEGLIGENCE UNDER LOUISIANA LAW

Even assuming that Plaintiffs bring a cause of action under Louisiana Civil Code article 2315, Plaintiffs nonetheless do not establish a cause of action upon which relief can be granted. According to the Supreme Court of Louisiana, liability for negligence under La. Civ. Code art. 2315 is determined by a duty/risk analysis.[75]

> Under the duty/risk analysis, the plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and, (5) proof of actual damages (the damages element).[76]

"Under the duty-risk analysis, a plaintiff must establish each and every element by the requisite burden of proof to be successful. Thus, failure to establish any one of the elements is fatal to his right to recover."[77]

### a.    Plaintiffs Do Not Establish Duty

"The existence of duty is a question of law," and "[t]he inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." [78] Here, Plaintiffs claim that "Defendants have a duty to use

---

[75] *See Farrell v. Circle K Stores, Inc.*, 2022-00849 (La. 3/17/23), 359 So. 3d 467, 473.

[76] *Id.* (citing *Malta v. Herbert S. Hiller Corp.*, 21-209, p. 11 (La. 10/10/21), 333 So. 3d 384, 395).

[77] *La. Swabbing Serv., Inc. v. Enter. Prod. Co.*, 2000-1161 (La. App. 3 Cir. 5/2/01), 784 So. 2d 862, 864.

[78] *See id.* (citing *Malta*, 333 So. 3d at 395).

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

reasonable care to avoid damage to others,"[79] "a duty to comply with various regulations and laws governing the handling, storage, disposal, and transportation of hazardous substances, including oil and gas,"[80] a "duty to clean up any contamination resulting from their operations, and to prevent it from migrating onto neighboring properties,"[81] and "a duty not to conduct their business in a manner that causes bodily injury, economic losses, business interruption, medical expenses, lost wages, or pain and suffering."[82] However, Plaintiffs fail to provide any authority, including specific rules or regulations relating to these alleged duties owed by Defendants. Plaintiffs merely provide a "threadbare recital" of the duty element of negligence while making conclusory statements that Defendants owe Plaintiffs certain duties not supported by law. This does not satisfy the pleading requirement under *Iqbal*.

### b.    Plaintiffs Do Not Establish Breach of Duty

Plaintiffs similarly fail to properly allege that Defendants breached their alleged duties. Louisiana courts apply the risk/utility balancing test to determine if a defendant has breached the duty owed.[83] The risk/utility test considers four pertinent factors: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and, (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature."[84] Notably, Plaintiffs make no mention of the risk/utility balancing test or allegations that any of the relevant factors support finding Defendants breached their supposed duties. Regarding breach of

---

[79] *See* Plaintiffs' Amended Class Action Complaint (R. Doc. 7), ¶ 30(b).

[80] *See id.* at ¶ 30(c).

[81] *See id.* at ¶ 30(e).

[82] *See id.* at ¶ 30(f)

[83] *Farrell*, 359 So. 3d at 474 (citing *Boykin v. La. Transit Co.*, 96-1932 (La. 3/4/98), 707 So. 2d 1225, 1231).

[84] *Id.* (citing *Bufkin v. Felipe's La., LLC*, 2014-0288 (La. 10/15/14), 171 So. 3d 851, 856).

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

duty the complaint only alleges that, "Defendants breached these duties while operating the Pipeline and Pipeline System . . . . by operating, monitoring, and maintaining the Pipeline and Pipeline System in a negligent manner."[85] Again, Plaintiffs provide a mere threadbare recital of the element for breach of duty, without alleging any specific facts. Plaintiffs' argument that Defendants breached their duty because they allegedly operated negligently is a circular argument where Plaintiffs are attempting to establish a cause of action for negligence by stating that Defendants operated in a negligent manner. This cannot be said to satisfy the element of breach of duty as the presence of negligence has not yet been established as it is the focus of this inquiry.

### c.    Plaintiffs Do Not Establish Cause-in-Fact

Plaintiffs further do not even allege the cause-in-fact element of negligence. "Cause-in-fact usually is a 'but for' inquiry, which tests whether the accident would have happened but for the defendant's substandard conduct."[86] Whereas Plaintiffs allege that their damages resulted from Defendants actions, Plaintiffs never allege that but for Defendants' actions, their injuries would not have occurred. As such, Plaintiffs have failed to plead an essential element of their negligent cause of action.

### d.    Plaintiffs Do Not Establish Scope of Duty

Finally, Plaintiffs fail to allege that Defendants' conduct was the legal cause of their injuries. "The legal cause or scope of duty inquiry is fact sensitive and ultimately turns on a question of policy as to whether a particular risk falls within the scope of the duty."[87] While there is no set rule for determining the scope of the duty, courts can consider the ease of association of

---

[85] *See* Plaintiffs' Amended Class Action Complaint (R. Doc. 7), ¶¶ 30(d), 30(g).

[86] *Malta*, 333 So. 3d at 398.

[87] *Scott v. Pyles*, 1999-1775 (La. App. 1 Cir. 10/25/00), 770 So. 2d 492, 500 (citing *Roberts v. Benoit*, 605 So. 2d 1032, 1044 (La. 1991)).

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

the complained harm and the defendant's conduct.[88] Here, Plaintiffs fail to include any allegation that their complained about injuries are easily associated with Defendants' alleged conduct.  In fact, it is unclear what specific conduct, if any, Plaintiffs allege contributed to any claim for negligence. Plaintiffs merely state that Defendants operated, monitored, and maintained the subject pipeline in a negligent manner, but do not identify any specific conduct of the Defendants.[89] Without alleging some identifiable conduct, it is impossible to conclude that such conduct is easily associated with Plaintiffs' injuries.

As Plaintiffs fail to allege and/or establish the necessary elements of negligence under Louisiana law, Plaintiffs cannot state a claim upon which relief can be granted for negligence, and Plaintiffs' negligence claim should be dismissed pursuant to Rule 12(b)(6).

### D.    PLAINTIFFS DO NOT STATE A CLAIM FOR STRICT LIABILITY UNDER LOUISIANA LAW

Plaintiffs also fail to state a claim for "strict liability" under Louisiana Civil Code articles 2317-2317.1. Article 2317 states, "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."[90] Article 2317.1 states:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitor in an appropriate case.[91]

---

[88] *See Malta*, 333 So. 3d at 399 (citations omitted).

[89] *See* Plaintiffs' Amended Class Action Complaint (R. Doc. 7), ¶ 30(g).

[90] La. Civ. Code art. 2317.

[91] La. Civ. Code art. 2317.1.

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

Whereas Plaintiffs state that these articles "provide that a custodian is strictly liable for damage occasioned by the things he owns,"[92] this is a blatant misrepresentation of the law. The Supreme Court of Louisiana has expressly found that the legislature eliminated strict liability for defective things in one's custody, and that the strict liability standard was replaced by a negligence standard.[93] Therefore, Plaintiffs' cause of action for strict liability cannot be premised on Articles 2317-2317.1. Plaintiffs cite no other authority for their cause of action of strict liability, thus Count 3 of Plaintiffs' Amended Class Action Complaint should be dismissed.

However, even if the Court interprets Plaintiffs' third cause of action to allege a negligence cause of action under Articles 2317-2317.1, the cause of action should still be dismissed as Plaintiffs fail to allege or establish the requisite elements. In order to state a claim under Articles 2317-2317.1, a plaintiff must establish the elements of negligence[94] and that: (1) the thing was in the owner/custodian's custody or control; (2) there exists a vice, ruin, or defect; (3) the owner/custodian knew or should have known of the vice, ruin, or defect; (4) the vice, ruin, or defect caused damage to plaintiff; and (5) the damage could have been prevented by the exercise of reasonable care and defendant failed to exercise such care.[95]

### 1. NEGLIGENCE STANDARD

The Supreme Court of Louisiana has made it clear that a plaintiff must establish the elements of negligence in order to bring a claim under Articles 2317-2317.1.[96] However, Plaintiffs'

---

[92] *See* Plaintiffs' Amended Class Action Complaint (R. Doc. 7), ¶ 31(b).

[93] *See Farrell*, 359 So. 3d at 473.

[94] As previously discussed, the five elements of negligence are: (1) duty; (2) breach of duty; (3) cause-in-fact; (4) scope of duty; (5) damages. *See id.* (citing *Malta*, 333 So. 3d at 395).

[95] *See* La. Civ. Code art. 2317.1; *Farrell*, 359 So. 3d at 473.

[96] *See Farrell*, 359 So. 3d at 473.

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

complaint fails to identify any duty associated with the cause of action under Article 2317-2317.1. The cause of action cannot stand where Plaintiffs do not allege that Defendants owed them a duty.

While Plaintiffs do allege that "Defendants' operations are the cause-in-fact of Plaintiffs' damages," they fail to provide any additional support of this conclusory allegation. Conclusory allegations such as this will not suffice to support a cause of action.

Plaintiffs also fail to provide a complete risk/utility analysis to determine breach of duty and instead only state that "[t]he burden of preventing hazardous releases into the water and soil is slight in comparison to the gravity of harm to the Plaintiffs and the Class."[97] This statement does not consider the relevant factors and merely comes to an unsupported conclusion.

Finally, this cause of action does not indicate which alleged damages are associated with this claim. Plaintiffs allege generalized "damage(s)" without provide any specific damages resulting from specific conduct. These generalized and conclusory allegations are insufficient to support a cause of action under Articles 2317-2317.1. Again, finding that Plaintiffs do not properly allege the requisite elements of a negligence cause of action, Plaintiffs' cause of action under Articles 2317-2317.1 should be dismissed.

## 2. ADDITIONAL ELEMENTS UNDER ARTICLE 2317.1

One of the prerequisites to bring any claim under Article 2317.1 is establishing ownership over the thing. Plaintiffs state that "Defendants own and operate the Pipeline and Pipeline System,"[98] however, this is not an accurate statement. Whereas MPOG owns and operates the subject pipeline, Third Coast is a separate and distinct legal entity that does not own or operate the

---

[97] Plaintiffs' Amended Class Action Complaint (R. Doc. 7), ¶ 31(c).

[98] *Id.* at ¶ 31(b).

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

pipeline. Plaintiffs even acknowledge this in their description of parties.[99] As such Plaintiffs cannot state a negligence claim under Article 2317.1 against Third Coast.

Whereas Plaintiffs allege there was a defect,[100] Plaintiffs fail to provide any supporting information, including specifications of the exact defect. Plaintiffs merely allege the elemental defect requirement of Article 2317.1 without any additional support, which cannot not support a claim under which relief can be granted.[101]

Additionally, specific to a claim under Article 2317.1, Plaintiffs must show that Defendants knew or should have known of the vice, ruin, or defect. Plaintiffs merely allege that "Defendants knew or should have known, in the exercise of reasonable care, of the unreasonable risk of releasing contaminants into the waters of the Gulf of Mexico and coastal Louisiana . . . ."[102] Plaintiffs provide no additional support for this allegation which is no more than a threadbare recital of the element of the cause of action.  This conclusory allegation is insufficient under *Iqbal*.[103] As failure to establish even a single one of these elements is fatal to Plaintiffs' claim, and Plaintiffs have failed to establish several necessary elements, this cause of action should be dismissed pursuant to Rule 12(b)(6).

## IV.    CONCLUSION

For the foregoing reasons, Defendants request that the Court dismiss Plaintiffs' First Amended Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(1) as this matter is not yet ripe for review and Plaintiffs lack Article III standing to bring this suit. In the alternative, Defendants

---

[99] *See id.* at Part II(B).

[100] *See id.* at ¶ 31(c).

[101] *See Iqbal*, 556 U.S. at 678.

[102] Plaintiffs' Amended Class Action Complaint (R. Doc. 7), ¶ 31(d).

[103] *See Iqbal*, 556 U.S. at 678.

Motion And MIS For 12(B)(1) And 12(B)(6) (FINAL)(6277520.1)

request that the Court dismiss Plaintiffs' claims brought under the Oil Pollution Act of 1990, negligence, and strict liability pursuant to Fed. R. Civ. P. 12(b)(6).

Date: March 4, 2024

Respectfully Submitted:

*/s/ Cheryl M. Kornick*
Cheryl M. Kornick (Bar #19652)
Kelly Brechtel Becker (Bar #27375)
Zachary D. Berryman (Bar #40278)
**LISKOW & LEWIS**
Hancock Whitney Center
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
Email: cmkornick@liskow.com
          kbbecker@liskow.com
          zberryman@liskow.com

***Attorneys for Third Coast Infrastructure, LLC and Main Pass Oil Gathering Company, LLC***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 4, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.

*/s/ Cheryl M. Kornick*